May Term,
1859.

Hizer
v.
The State.

Hizer *v.* The State.

A bet upon the result of an election, is within § 28, 2 R. S. p. 435.

An information is not bad for charging the time when an offense is alleged to have been committed, in figures.

The contingency of a bet upon the result of an election, is determined when the popular vote is cast; though there may be difficulty in proving the result until it is officially determined in the manner prescribed by the constitution and laws.

*A.* and *B.* were contesting candidates for an office for which an election was to be held on the 14th of *October,* 1856. Prior to the election, *C.* offered to purchase a hat of *D.* to be paid for in case *A.* should be elected at the election to be held on that day, and not otherwise. *D.* offered to sell the hat to *C.* and wait with him for payment until *B.* should be defeated, and upon these terms *C.* purchased.

*Held,* 1. That the parties had reference to the pending election.

2. That the contract was a wager.

A sale of goods, to be paid for or not, according as an election may result, is as much within the reason and policy of the law, as any other form of bet or wager upon the result of an election.

The Courts take notice judicially of the accession of the chief executive of the confederacy or state. Thus, where at the time of the trial of an information against a person for betting upon the election of a certain candidate for governor, that candidate had entered upon the duties of the office, in pursuance to the election upon the result of which the bet was made, it was *held,* that no proof of his election was necessary.

*Tuesday,*
*May* 31.

APPEAL from the *Wayne* Court of Common Pleas.

WORDEN, J.—Information against the appellant, charging that on the 14th day of *October,* 1856, at, &c., the defendant unlawfully did win and take from one *William S. T. Morton* one hat, of the value of three dollars, by then and there unlawfully betting and wagering with the said *Morton* for the said hat, upon a certain wager, to-wit, the result of a certain election had and held on the 14th day of *October,* 1856, in the state of *Indiana,* for the election of governor of the state.

The information was filed on the 19th of *December,* 1856.

The defendant moved to quash the information upon the ground—

1. That it did not charge a violation of any of the penal laws of the state.

2. That it did not show that the contingency upon which the bet was made had been determined.

3. That at the time of filing the information, the result of the election had not been legally and officially determined.

The information is predicated upon § 28, 2 R. S. p. 435, which provides that "Every person who shall, by playing or betting at or upon any game or wager, either lose or win any article of value, shall be fined not exceeding 50 dollars."

That the facts charged constitute an offense against the above provision, is settled by the case of *Parsons* v. *The State*, 2 Ind. R. 499.

An objection is made that the information charges in figures, only, the time when the offense is alleged to have been committed. This, under the statute of 1852, is sufficient. *Hampton* v. *The State*, 8 Ind. R. 336.

The second and third objections to the information seem to resolve themselves into one, which is, that the contingency upon which the hat was either to be won or lost, did not take place or transpire until the returns of the election were opened and published by the speaker of the House of Representatives, in the presence of both houses of the General Assembly, and that the hat could not be said to have been won until that event transpired.

Under the constitution and laws of the state, the general election for governor, &c., takes place on the second *Tuesday* of *October*. The clerk of the Circuit Court for each county makes two certified statements, under his seal, of the number of votes each candidate received in his county, one of which he transmits to the speaker of the House of Representatives of the next General Assembly, who opens and publishes such returns in the presence of both houses, and the person having the highest number of votes shall be elected. Constitution, art. 2, § 14, art. 5, §§ 4, 5.—1 R. S. p. 267, § 47.

We are of opinion, however, that the contingency transpired when the popular vote was cast. The subsequent steps are to be taken for the purpose of ascertaing legally

the result of such popular vote. We think that a bet upon such election is either lost or won as soon as the vote is cast at the general election, as the contingency has then transpired, although it may not be known for some time in whose favor it has resulted.

No question as to the mode of proving which way the contingency resulted, arises in determining the validity of the information.

The Court below overruled the motion to quash, and we think correctly.

The defendant was tried by the Court, found guilty, and fined one dollar, and judgment was rendered against him, over a motion for a new trial.

By a bill of exceptions, it appears that on the trial, the state proved that on the 14th of *October*, 1856, the defendant went into the hat-store of *William S. T. Morton*, in the county of *Wayne*, and proposed to *Morton* to purchase from him a hat, to be paid for by the defendant, in case *Oliver P. Morton* should be elected governor, at the election held in *Indiana* on that day, but not otherwise. *Morton* replied that he was not selling hats on *Morton's* election, but that he would sell the defendant a hat, and wait with him for payment until *Willard* should be defeated. Defendant acceded to the terms, and purchased and received from *Morton* a hat of the value of three dollars, and agreed to pay for the same the sum of three dollars when *Willard* should be defeated.

There was testimony, excepted to by the defendant, that in the opinion of the witness, the parties referred to meant that the hat was to be paid for in case *Ashbel P. Willard* should be defeated for governor at the election on the said 14th of *October*, 1856, and not otherwise.

Setting aside the opinion of the witness as incompetent, we think there was sufficient evidence before the Court, in reference to this branch of the case, to sustain the finding.

Taking the whole statements of the parties together, it is evident that the parties had reference to the then pending election for governor, and that the hat was not to be

paid for unless *Willard* should be defeated for governor at said election.

It is immaterial that the defendant was only to pay the value of the hat upon the contingency specified. The contract was a wager, as much as if the defendant were to have paid double its value on the contingency happening against him.

The case of *Parsons* v. *The State, supra,* and the authorities therein cited, we think, settle this point. There, the contract was for 65 dollars, payable when General *Taylor* should be elected president of the *United States.* The mare for which the money was to be paid, was proven by one witness to have been worth 50 dollars, and by another, 65 dollars, the full amount to be paid. In *Marean* v. *Longley,* 21 Maine R. 26, the note payable when *Van Buren* should be elected president, was given for the estimated value of the horse sold. And in *Trammell* v. *Gordon,* 11 Ala. R. 656, the notes were for the value of the land. A sale of goods, to be paid for or not, according as the election may result, is as much within the reason and policy of the law, as any other form of a bet or wager upon the result of an election, and is equally prohibited.

On the trial, there was no proof of the election of Governor *Willard,* except what was derived from newspapers and common rumor, and this was objected to as incompetent. A witness says that *Willard* was elected; but he derived his information solely from newspapers and common rumor; he knew nothing about it except that it was generally conceded that *Willard* was elected; had heard the defendant say nothing about it; and did not know whether the result of the election had been officially declared.

It is insisted that this evidence is entirely incompetent, and that there was nothing before the Court to show that the defendant had won the hat as charged in the information. Had the cause been tried before Governor *Willard's* official term had commenced, the question thus raised would have been entitled to serious consideration. It is extremely doubtful whether the testimony was at all legit-

imate.   As before stated, we think the hat was won when the popular vote was cast, although there might be difficulty in proving it until the result was officially determined in the manner prescribed by the constitution and laws of the state.

The cause was tried on the 14th day of *January*, 1857. Governor *Willard's* official term commenced on the second *Monday* of *January* of that year, it being the 12th day of the month, and he was the acting governor of the state at the time of the trial of the cause.   Courts will take notice judicially of the accession of the chief executive of the nation or state.   1 Greenl. Ev. § 6.   The Court noticing judicially that on the 12th of *January* of that year, Governor *Willard* was inducted into his office, and entered upon the discharge of its duties, the presumption would follow that he was duly elected, and we think no proof was necessary to make out this branch of the case.   The evidence on this branch might have been stricken out, and still the Court would have been abundantly justified in its finding.

*Per Curiam.*—The judgment is affirmed with costs.

*M. Wilson* and *C. H. Burchenal*, for the appellant.

*J. Railsback*, for the state.